UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Jalen Rasheed Odom, ) | Civil Action No.: 4:21-cv-04180-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | ORDER |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

**I. RELEVANT BACKGROUND**

**A.     Procedural History**

Plaintiff filed an application for SSI on January 20, 2020, alleging inability to work since October 10, 2019. (Tr. 15). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in August 2021 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on August 20, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-25). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on November 23, 2021, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff

filed an action in this court in December 2021. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on November 14, 1995, and was twenty-four years old when the application was filed. (Tr. 23). Plaintiff had at least a high school education and no past relevant work. (Tr. 23). Plaintiff alleges disability originally due to schizophrenia. (Tr. 57). Pertinent medical records will be discussed under the relevant issue headings.

**C.     The ALJ's Decision**

In the decision of August 20, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 15-25):

1. The claimant has not engaged in substantial gainful activity since January 30, 2020, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: schizophrenia (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to occupations requiring no more than simple routine repetitive task, not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few work place changes; he is further limited to occupations requiring no more than occasional interaction with co-workers and members of the general public; and he will be able to maintain concentration, persistence and pace for 2 hour increments.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on November 14, 1995 and was 24 years old, which is defined as a younger individual age 18-49, on the date the application was filed

      (20 CFR 416.963).

7.     The claimant has at least a high school education (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 30, 2020, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in the subjective symptom evaluation, especially as to medication side effects, in determining the RFC mental limitations, and in evaluating the persuasiveness of Dr. Bradley's examining opinion. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

        2.        **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's

findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

<u>**Subjective Symptom Evaluation**</u>

Plaintiff argues the ALJ erred in the subjective symptom evaluation, especially as to medication side effects.

SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.*(internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must

explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the

7

individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ reviewed Plaintiff's testimony and allegations:

> The claimant testified that he has schizophrenia that causes symptoms of hearing voices, paranoia of others, social isolation and difficulty focusing, but no longer experiences visual hallucinations. He testified that his medication is effective in alleviating his symptoms but tends to wear off after about three weeks. The claimant and his mother also testified that he experiences medication side effects of fatigue, weight gain and tremors. His mother added that he has difficulty with his memory and focus (Hearing Testimony, Exhibit 9E, 11E).

(Tr. 20).

The ALJ found Plaintiff's allegations concerning intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the record evidence as explained in the decision. (Tr. 20). Then, the ALJ specifically found those allegations were inconsistent "because of claimant's noted improvement with treatment, mainly benign clinical examination findings and activity level." (Tr. 20). The ALJ then discussed that after Plaintiff started treatment, he had noted improvement with a lack of symptoms and a majority of normal exam findings. (Tr. 20). The ALJ stated: "There were some sparse findings of cognitive and social deficits, but these were not consistent findings. If the claimant were limited to greater levels, one would expect consistent findings indicative of such." (Tr. 20). The ALJ noted Plaintiff performed some household tasks and chores and spent time with his family. "Overall, this evidence is not consistent with disabling functional limitations." (Tr. 20).

Plaintiff argues the ALJ failed to consider medication side effects and symptoms. (ECF No. 16 at 11). The ALJ noted testimony that medication was effective in alleviating symptoms but tended to

wear off after three weeks and testimony that he had side effects of fatigue, weight gain,[3] and tremors. (Tr. 20). Later, the ALJ separately addressed Plaintiff's allegations as to medication side effects finding "the medical record does not contain any significant complaints related to side effects or requests for medication adjustments," citing all the treatment exhibits from 2019-2021. (Tr. 21, 283-397). Further, the ALJ specified page numbers of exhibits of multiple exams of Plaintiff denying side effects during his treating provider visits. (Tr. 22). Further, the ALJ found "his clinical examination findings were not reflective of any significant deficits related to his reported side effects," again citing specific exam pages. (Tr. 22). Plaintiff acknowledges the ALJ's citation to evidence of denial of symptoms and side effects across years of notes. (ECF No. 16 at 12-13). Plaintiff speculates without support that Plaintiff's denial of symptoms and problems "is common in schizophrenic patients." (ECF No. 16 at 13). Plaintiff asserts related functional limitations are being off task and being absent due to side effects. (ECF No. 16 at 14). The record citation by the ALJ supports the ALJ's statements that Plaintiff frequently denied symptoms and side effects and exams showed intact attention/concentration and calm and cooperative behavior with no delusions, ideations, or hallucinations. (Tr. 20-23).

There is no requirement that the ALJ discuss each and every piece of evidence or statement. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007); *Reynolds v. Kijakazi*, 2022 WL 1241646, at *5 (M.D.N.C. Apr. 27, 2022)(collecting cases). Citing to exams, reports, and opinions, the ALJ addressed the subjective symptom evaluation in accordance with the regulations.

A claimant's allegations alone can never establish that he is disabled. 20 C.F.R. § 404.1529.

---

[3] The ALJ specifically found obesity was a non-severe impairment, the record showed no impact on functioning, and Plaintiff received no treatment for obesity. (Tr. 17-18).

An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not consistent with the record. *See also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

**Dr. Bradley**

Plaintiff argues the ALJ erred in evaluating the persuasiveness of Dr. Bradley's examining opinion.

For applications filed on or after March 27, 2017, such as this action, the regulatory framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 416.920c (noting that the treating physician rule only applies to claims filed before March 27, 2017). The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with

the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2).

Plaintiff's attorney hired Dr. Bradley to examine Plaintiff. (Tr. 390). Dr. Bradley reviewed four notes from 2019, 2020, and 2021 and Plaintiff's high school records. (Tr. 390). Plaintiff reported having a good relationship with his parents. (Tr. 390-391). Plaintiff's mother described him as a good student and athlete. (Tr. 391). The transcript showed a 2.4 GPA. (Tr. 391). Plaintiff attended college for two years and stated he got tired of going to school. Plaintiff spent the next year "doing little that was productive." Plaintiff worked at Wal-mart for two months before going back to school after a year but dropped out again. (Tr. 391). Plaintiff mainly played basketball. Plaintiff alleged he had paranoid thoughts and heard voices between 2017 and 2019. Plaintiff alleges then at some point he blacked out and woke up in the hospital. Records showed Plaintiff was admitted to the hospital in October 2019. The 2019 hospital admission was his first encounter with mental health professionals. (Tr. 391). Plaintiff's hospital labs were positive for cannabis; he was diagnosed with schizophrenia and cannabis

11

use disorder. (Tr. 391). Plaintiff continued treatment with monthly medication injections with a community mental health center. (Tr. 391-392). Plaintiff reported injections helped a lot and reduced his hallucinations a great deal. Plaintiff alleged during the fourth week after an injection, symptoms began to return. (Tr. 392). Plaintiff reported to Dr. Bradley that he has used marijuana daily for a number of years and continues to use marijuana daily. (Tr. 392). Plaintiff was arrested for marijuana and charges were dropped after a pretrial intervention program. (Tr. 392). Plaintiff reported he did not like to be around other people and was very anxious when he had to leave the house. (Tr. 392). Upon exam, Plaintiff smelled of cigarette smoke and appeared somewhat lethargic. (Tr. 392). Plaintiff engaged the test items but tended to give up easily and lacked persistence on difficult items. Plaintiff was able to comprehend and follow simple instructions. Motor execution was slow. "He responded to all items but in a limited fashion." "He was not particularly forthcoming." Attention and concentration skills were below normal. (Tr. 392). Memory about his own life appeared poor. His speech suggested he was functioning below a normal level of intelligence. Judgment appeared to be quite limited. (Tr. 392). Plaintiff had flat affect, anxious mood, appropriate thought content, and concrete/simplistic thought processes. "There were no indications of the presence of delusions but they might have been present but controlled. He did not appear to be hallucinating during the examination." (Tr. 393). Full scale IQ was 74. (Tr. 393). Other tests were suggestive of borderline intellectual functioning. (Tr. 393-394). "His low score on working memory indicates difficulty with attention and concentration." (Tr. 395). "Mr. Odom's level of functioning is variable depending on the intensity of his psychosis and its regulation with medication." (Tr. 395). Plaintiff could do simple activities at beginning of injection

period but toward the end of a month[4]'s time there was an increase in symptoms and a reduction in ability to function. (Tr. 395). Dr. Bradley opined when his psychosis is dormant, he can do daily activities. (Tr. 396). Dr. Bradley opined that: "His ability to do the tasks of daily living appear to be moderately impaired and his ability to maintain normal social relationships appears to be markedly impaired." (Tr. 396). "The client's social adjustment is tenuous. He appears to continue to harbor some paranoid beliefs, even when medicated, and does not like to be around people as he is threatened by them. He does not feel safe away from his home. His ability to maintain normal social relationships appears to be markedly impaired." (Tr. 396). Dr. Bradley stated Plaintiff's pace would be below average on a simple job. "When he is off his medication and his psychosis is active, Mr. Odom's functioning is markedly impaired." (Tr. 396). Dr. Bradley stated Plaintiff would probably not be able to hold a simple job. Diagnostic impression was "psychotic" and with medication currently managing symptoms sufficiently well to function in his simple routine. (Tr. 396). Diagnosis were schizophrenic spectrum disorder, paranoid type and cannabis use disorder. (Tr. 397).

The ALJ found the July 2021 opinion by examiner Dr. Bradley, Ph.D. not persuasive. (Tr. 22-23). The ALJ found the one-time exam performed by Dr. Bradley was supportive of Dr. Bradley's opinion. However, the ALJ found there was a longitudinal treatment record including Plaintiff's own reports that were not consistent with Dr. Bradley's opinion or exam. (Tr. 23). The ALJ cited to the following exhibits which are reviewed below, Exhibits 2F/7, 2F/11-12, 2F/15, 2F/16, 2F/19, 4F/1, 5F/7, 5F/10, 5F/14. (Tr. 23). Exhibit 2F/7 is an October 2019 initial assessment at the mental health clinic where Plaintiff felt better after being inpatient and was not feeling paranoid anymore. Plaintiff played

---

[4] Of note, in April 2021 medication changes, from three weeks to three months between doses with an extended release version, were made and Dr. Bradley's exam was in July 2021 with no acknowledgment of the medication schedule change. (Tr. 370, 380).

video games, smoked, and watched videos of basketball to deal with his problems. (Tr. 345). Plaintiff was motivated to get on an injectable medication. (Tr. 345). Exhibit 2F/11-12 was a continuation of notes where Plaintiff was interested in working and enjoyed being outdoors but did not have friends, just relatives who he spent time with. (Tr. 349). Plaintiff examined with calm behavior, cooperative attitude, flat affect, euthymic mood, and goal directed thought process. (Tr. 349-350). Plaintiff denied delusions and hallucinations. Plaintiff had intact attention and concentration and good judgment/insight. (Tr. 350). Exhibit 2F/15 is an April 2020 note. Plaintiff was getting monthly injections with no mood changes. Plaintiff continued watching videos, playing video games, and working out some. (Tr. 353). Plaintiff denied any ideations, manic symptoms, or hallucinations. (Tr. 353). Exhibit 2F/16 is the 2020 exam by treating Dr. Smith, M.D. indicating cooperative attitude, calm behavior, articulate speech, euthymic mood, appropriate affect, intact concentration/attention, and no delusions/ideations. (Tr. 354). Diagnosis were schizophrenia and moderate cannabis use disorder. (Tr. 354). Exhibit 2F/19 was a January 2020 progress summary. (Tr. 357). Plaintiff was progressing as he did not have any active symptoms since starting medications. Plaintiff continued to need services to increase coping skills. (Tr. 357). Exhibit 4F/1 was a 2021 clinic note by Dr. Smith. Plaintiff had no voices, no racing thoughts, and good mood. Plaintiff denied medication side effects. (Tr. 369). Plaintiff examined with cooperative attitude, calm behavior, goal directed thought process, euthymic mood, appropriate affect, intact memory/attention/concentration, good insight/judgment, and no delusion/hallucinations. (Tr. 369). Exhibit 5F/7 is an October 2020 note where Plaintiff had been doing good with good mood, no voices, and no side effects. Plaintiff was going to go back to college. Plaintiff denied hallucinations, symptoms, or ideations. (Tr. 377). Exhibit 5F/10 is a July 2020 progress summary. (Tr. 380). Plaintiff was progressing with no active psychotic symptoms, isolating less, and putting on weight since he switched

to every three week medication administration regime. (Tr. 380). Plaintiff was being more assertive, less isolative, and was engaging in family and social functions. Plaintiff needed services to increase effective coping skills. (Tr. 380). Exhibit 5F/14 is a January 2021 progress summary by therapist Field. (Tr. 384). Plaintiff reported he did not have hallucinations and moods had been stable. Plaintiff still struggled with telling people his needs and had difficulty enforcing boundaries. Plaintiff would continue being seen once or twice a month for stress management and learning assertive communications skills. (Tr. 384).  All the notes above were relied on by the ALJ to find examiner Dr. Bradley's opinions were inconsistent with treatment records of other providers and Plaintiff's reports to those treating providers.

The ALJ then noted that Dr. Bradley's opinion was not consistent with Plaintiff's activity level during the relevant period, citing Exhibits 11E/5, 13E/1, 2F/7, 2F/11, 7F/7. (Tr. 23).  Exhibit 11E/5 is Plaintiff's February 2021 function report where Plaintiff reported he read, watched television, and did chores. (Tr. 241). Exhibit 13E/1 is Plaintiff's "collateral questionnaire" completed May 2021 by Plaintiff's mother stating Plaintiff's daily activities were television, video games, and socializing with family. (Tr. 250).  Exhibit  2F/7 is October 2019 mental health notes where Plaintiff stated he was feeling much better, was not paranoid anymore, and that his daily activities were playing video games, smoking, and watching videos. (Tr. 345). Exhibit 2F/11 is a continuation of that note where Plaintiff was interested in working and occupied his time by drawing, watching videos, basketball, swimming, being outdoors, and being with his cousins. (Tr. 349). Exhibit 7F/7 was Dr. Bradley's exam where it was noted Plaintiff was able to do self-care, household activities, and played basketball. (Tr. 396).

The ALJ considered the supportability and consistency factors in performing the analysis and cited to substantial evidence in the record to support the consideration of those factors in finding Dr. Bradley not persuasive.

15

**RFC: Mental**

Plaintiff argues the ALJ erred in determining the RFC mental limitations.

An adjudicator is solely responsible for assessing a claimant's RFC.  20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments.  Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7.  "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  *Id.*  Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' "  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).  The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision.  *See Craig*, 76 F.3d at 595.

The ALJ found an RFC of: "limited to occupations requiring no more than simple routine repetitive task, not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few work place changes; he is further limited to occupations requiring no more than occasional interaction with co-workers and members of the general public; and he will be able to maintain concentration, persistence and pace for 2 hour increments." (Tr. 19).

Plaintiff argues that treatment records "demonstrate persistent symptoms with possibly some slight improvement." (ECF No. 16 at 17). The ALJ cited to a number of treatment records where Plaintiff examined normally, denied hallucinations/ideations, and had a lack of symptoms. (Tr. 20-23). As to any limits that Plaintiff alleges exist at the three week mark after taking the medication injection monthly, the ALJ cited to Exhibit 5F/10, a July 2020 progress summary that Plaintiff's medication administration had been changed to every three weeks, Plaintiff had no active psychotic symptoms, Plaintiff was isolating less, and Dr. Smith noted in April 2021 Plaintiff would only bee seen yearly for medication management and injections had been changed to Invega Trinza every three months. (Tr. 21, 370, 380); (ECF No. 16 at 17). Plaintiff argues "the evidence demonstrates that his medications do not always keep his mental illness under control." (ECF No. 16 at 18). As the ALJ discussed, after being placed on medication, Plaintiff's symptoms were denied or listed as not active and Plaintiff examined with intact attention/concentration and several other normal exam findings. (Tr. 20-23).

The Court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. In formulating the RFC, the ALJ considered Plaintiff's allegations, objective evidence, and opinions. (Tr. 20-23). The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. Even where there is evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

## III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

December 6, 2022  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge